UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

```
IN RE:                         )
                               )    Chapter 7
JAMES L. STOUT,                )
                               )    Bankruptcy No. 05-01999
      Debtor.                  )
```

**ORDER RE: MOTION TO DISMISS**

This matter came before the undersigned on December 19, 2005 on U.S. Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b). Janet Reasoner appeared for the U.S. Trustee. Guy Booth appeared for Debtor James Stout. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

U.S. Trustee asserts granting Debtor Chapter 7 relief would be a substantial abuse of the Bankruptcy Code. He asserts Debtor has sufficient disposable income to fund a Chapter 13 plan paying unsecured creditors 38% over three years. Debtor resists dismissal. He argues he has necessary expenses which leave him with no disposable income.

**FINDINGS OF FACT**

The primary point of contention is the amount Debtor budgets for expenses relating to his 12 year-old daughter's home schooling and ice skating. Exhibit 2 reflects the U.S. Trustee's disposable income analysis. Debtor lists monthly home school expense of $700 and skating expense of $500 on his Schedule J. U.S. Trustee adjusts the home school expense to $125 and allows nothing for skating. To a lesser extent, the U.S. Trustee challenges amounts for telephone, cable and internet, cell phone, food, clothing and recreation declared by Debtor. The U.S. Trustee asserts allowable expenses total $3,227, compared to Debtor's Schedule J expenses totaling $4,800.

Jennifer Cline testified as a paralegal for the U.S. Trustee. She stated that a reasonable amount for home schooling expense is $125 per month. She based this determination on her experience reviewing Chapter 7 petitions and on guidelines now existing under the new Bankruptcy Reform Act which became effective after Debtor filed his Chapter 7 petition. Ms. Cline testified that her review of the petition raised concerns regarding disposable income because of the high level of credit card debt (approximately $96,000), high

income, high expenses for home school and skating, and a large TIAA-CREF retirement account of $245,000.  The U.S. Trustee asserts that the $140 per month Debtor contributes toward his TIAA-CREF account is inappropriate, considering the large balance already in the account.  This amount represents 2 1/2% of Debtor's gross income, and is the minimum Debtor can contribute in order to receive the State's 7 1/2% contribution.

The U.S. Trustee learned at the § 341 meeting that Debtor received approximately $22,000 from the sale of a business investment in March 2005.  He used this money to pay off mortgage, property tax and insurance arrears, and bought and repaired a vehicle.  Debtor filed his Chapter 7 petition on April 29, 2005.  The U.S. Trustee points out that Debtor continued to use at least two credit cards in the last weeks before the petition date, including charges for ice arenas, restaurants, travel and sporting goods shops.

Debtor James Stout is a professor of economics and business at Cornell College, where he has worked for 24 years.  He testified that he is the primary caretaker for his daughter, G.S., who will be 13 in January.  He also has a 20-year-old son, Z.S., who is a sophomore at Colorado College and lives with Debtor part-time.  Prior to November 2004, Mr. Stout's ex-wife had custody of the children but, at that time, G.S. refused to live with her mother any longer.  Custody was legally changed December 31, 2004, at which time Debtor agreed to waive child support from his ex-wife.  Previously, Mr. Stout was paying $970 per month in child support for both children.  Mr. Stout testified that his debts arose over the past ten years as a result of his divorce and child support obligations.

Mr. Stout testified about G.S.'s difficulties in school.  She has not been diagnosed as ADHD but does have mild attention issues.  She has been seeing a psychiatrist since her parents got divorced.  G.S. needed special help with math in third and fourth grades while attending school in Mount Vernon.  By the end of fourth grade, G.S. was behind in all areas of instruction except reading.  In fifth grade, she received special education in math and by November 2004 her teachers recommended a 45 day trial out with no further special education services as she had made great progress in math.

G.S. started fifth grade in Mount Vernon but transferred to Iowa City when she started living full time with Debtor after November 2004.  In both Mount Vernon and Iowa City, she had many absences which were a concern to her teachers.

2

Debtor testified that, as G.S. was not making any progress in school, he decided to home school her starting after Spring Break in April 2005.  Debtor's Exhibit A is his curriculum plan for G.S. for the 2005-06 school year.  Debtor hopes that G.S. will be ready to start in public high school as a freshman.  Debtor's Exhibit B shows total annual home school expenses of $8,585, including $3,780 for math tutoring, $1,800 for ballet lessons and $1,000 for home school skating fees.  Mr. Stout testified that the home school expenses are necessary in order to prepare his daughter for college.

    Three years ago, G.S. starting taking ice skating lessons.  Mr. Stout testified that she is quite talented and that this is the only thing in her life she could dedicate herself to and has been a tremendous boon to her self esteem.  Debtor categorizes G.S. as an elite skater who has placed between first and third at more than 40 events in which she has competed.  She spends approximately 18-21 hours per week skating.  Mr. Stout testified he feels G.S.'s skating is not a luxury and he said that he did not know what would happen to her psychologically if she was told she couldn't skate any longer.

    Debtor testified regarding some adjustments in his expenses compared to Schedule J.  Telephone, cable, internet and cell phone expenses total $241 per month, reduced from the total of $350 on Schedule J.  Water and sewer expense is $81 per month, rather than $50.  Total insurance expense is $200 per month, rather than $160.  Debtor testified that he also has expenses for his son in college, including airfare for studies in Europe next semester.  He further stated that Schedule J fails to provide for auto repairs, the high price of gas, an allowance for G.S. and costs associated with his need to replace his artificial leg in the next few months.  Debtor testified that Schedule J is understated based on his children's needs.

    The U.S. Trustee argues that this case is not about Debtor's daughter's education and emotional well-being.  It is about getting Debtor's creditors to pay for her elite education and skating aspirations.  Debtor wants to continue with his course of conduct, resulting in a monthly deficit of $800, and receive a discharge in bankruptcy.

    Debtor argues he is taking care of fundamental parental responsibilities.  Though his expenses are unusual, the circumstances show his budget is justified.  He argues that the expenses provide for critical needs of his son in college and his daughter who has special needs.

**CONCLUSIONS OF LAW**

Section 707(b) of the Bankruptcy Code provides the Court may dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7.  In re Taylor, 212 F.3d 395, 396 (8th Cir. 2000); 11 U.S.C. § 707(b). "Substantial abuse" is not a defined term. In the Eighth Circuit, "[a] Chapter 7 debtor's ability to fund a Chapter 13 plan 'is the primary factor to be considered in determining whether granting relief would be substantial abuse.'"  In re Koch, 109 F.3d 1285, 1288 (8th Cir. 1997).

For § 707(b) purposes, ability to pay creditors is measured by evaluating Debtors' financial condition in a hypothetical Chapter 13 proceeding.  Koch, 109 F.3d at 1288. Confirmation of a Chapter 13 plan requires, if an objection to confirmation is advanced, that the plan provide that all of the debtors' projected disposable income to be received during a three-year plan will be applied to plan payments.  11 U.S.C. § 1325(b)(1)(B).  "Disposable income" is defined as that which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor.  11 U.S.C. § 1325(b)(2)(A).  Evaluating a debtor's ability to fund a Chapter 13 plan necessitates a review of disposable income. See generally In re Butler, 277 B.R. 917, 920-21 (Bankr. N.D. Iowa 2002).

The Bankruptcy Code requires a meaningful and realistic budget, accompanied by the devotion of most of the debtor's surplus income to repay creditors.  In re Downin, 284 B.R. 909, 912 (Bankr. N.D. Iowa 2002).  Chapter 13 debtors are not required to live as paupers; neither are they allowed to continue an extravagant lifestyle at the expense of creditors. Butler, 277 B.R. at 920.  Courts apply § 1325(b) to allow debtors to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses.  In re Wessels, 311 B.R. 851, 855 (Bankr. N.D. Iowa 2004).

> Some expenditures are clearly essential, or nondiscretionary, such as reasonable amounts budgeted for food, clothing and shelter.  Debtors are also allowed some latitude regarding discretionary spending for items such as recreation, clubs, entertainment, newspapers, charitable contributions and other expenses.  The proper methodology is to aggregate all expenses projected by the debtor which are somewhat more discretionary

4

> in nature, and any excessive amounts in the
> relatively nondiscretionary line items such as food,
> utilities, housing, and health expenses, to quantify
> a sum which, for lack of a better term, will be
> called "discretionary spending."

Downin, 284 B.R. at 912-13 (citations omitted).  Discretionary expenses identified by courts include charitable contributions, gifts, recreation, private school tuition, payments for boats, campers and other luxuries, health club and country club dues, and newspapers and magazines.  Butler, 277 B.R. at 921.  Courts also scrutinize cable TV services, veterinary expenses, cell phones, unspecified home repairs, and deductions for voluntary retirement funds. See 2 Keith M. Lundin, Chapter 13 Bankruptcy § 165.1 (3d ed. 2000); In re Attanasio, 218 B.R. 180, 201-10 (Bankr. N.D. Ala.1998) (extensively collecting cases considering excessive or unreasonable expenses in the context of § 707(b) substantial abuse determination).

In In re Rathbun, 309 B.R. 901, 907 (Bankr. N.D. Tex. 2004), the court stated that more than parental preference is required to sustain an expenditure of $900 per month for private school tuition.  The court upheld a finding that annual educational expense for four children of $53,640 was "excessive and possibly even extravagant" in In re Kornfield, 164 F.3d 778, 784 (2d Cir. 1999).  Expenses for golf and music lessons were found not reasonably necessary in In re Falke, 284 B.R. 133, 139 (Bankr. D. Or. 2002).  Substantial abuse was found in In re Walsh, 287 B.R. 154, 157 (Bankr. E.D.N.C. 2002), where the debtors were paying expenses for private schools, hockey, travel and country club dues.  The court noted that the debtors were "motivated by a sincere desire to provide for their children the education and developmental activities that they consider best."  Id.  Telephone, cell phone, cable TV and internet expenses were scrutinized in In re Oimoen, 325 B.R. 809, 811 (Bankr. N.D. Iowa 2005), and Downin, 284 B.R. at 913.

## ANALYSIS

Pursuant to the foregoing, the Court must determine whether Debtor's expenses for home school and skating for G.S. are reasonable and necessary for the maintenance and support of Debtor and his dependents.

Addressing first the home schooling issue, there is no evidence with which to conclude that any school which G.S. has attended is substandard.  G.S. attended public school until the Spring of 2005.  Thus, home schooling for her is of short

5

duration. G.S. was in fifth grade in the Fall of 2004. She took the ITBS in November 2004 while still in public school. Her test results reflect a student whose overcall "achievement appears to be about average for fifth grade" (Exhibit G). What is noteworthy is the fact that G.S. was absent for almost 30% of the school days. Additionally, there is no professional evidence which makes a recommendation for home schooling. Only Debtor's "Curriculum Plan" draws such a conclusion. There also appears to be some correlation between the absences, home schooling and Debtor's desire to have flexibility for his daughter's ice skating activities. Debtor is not unusual in wishing to provide everything possible for his childrens' welfare. However, like most parents, Debtor must make decisions concerning what is affordable and what is simply financially unattainable. Debtor's wish to keep G.S. in home schooling under this record is a luxury.

Second, although Debtor appears sincere in his belief that G.S.'s skating activities are essential, this is an extravagance which is inappropriate in a Chapter 7 case. The record reflects substantial skating rink and lesson fees, plus out of state travel for competitions and other expenses for clothing and equipment. The amount Debtor budgets for this expense is substantial.

The Bankruptcy Code prevents a debtor seeking a Chapter 7 discharge from spending money, which could be available to creditors, on luxuries. The amounts which Debtor seeks to expend on home schooling and ice skating, while seeking to discharge $95,000 in credit card debt, is an unreasonable use of the bankruptcy system. These are discretionary or luxury expenses, paid from Debtor's disposable income which should be available to creditors in Chapter 13 plan payments. To conclude otherwise would allow the result which the U.S. Trustee argues; that is, allowing Debtor to finance these activities at the expense of unsecured creditors.

According to Debtor's Schedules I and J and his testimony at trial, the Court finds that Debtor is asserting total monthly expenses of $4,806. Of the expenses listed, the Court finds that the following are discretionary expenses: Recreation $150, Home School $700 and Skating for G.S. $500. Also, part of the amounts listed for Clothing of $300, and for Telephone, Cable and internet, and Cell phone totaling $241, are not reasonable and necessary and thus will be lumped into discretionary expenses. In total, Debtor's discretionary expenses are approximately $1500.

Considering income of $4,227, including the $140 deduction for retirement, Debtor has total disposable income

6

of approximately $920 per month.  In a hypothetical Chapter 13 plan, Debtor could pay approximately $29,000 toward unsecured debt over three years, or 30%.  The Court concludes that granting Debtor a discharge would be a substantial abuse of the Bankruptcy Code.  This case must be dismissed pursuant to § 707(b).  Debtor will be given the opportunity to voluntarily convert to Chapter 13 prior to entry of dismissal.

**WHEREFORE**, the U.S. Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b) is GRANTED.

**FURTHER**, Debtor shall have until January 23, 2006 within which to elect to convert to Chapter 13.

**FURTHER**, if Debtor fails to convert to Chapter 13 by that date, this case will be dismissed for substantial abuse without further notice or hearing.

**DATED AND ENTERED:** January 9, 2006

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE

7